**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT L. WILLIAMS,<br><br>                               Plaintiff,<br><br>     v.<br><br>BACA, *et al.*,<br><br>                               Defendants. | 3:15-cv-00012-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss, or, in the alternative, motion for summary judgment (#29). Plaintiff opposed (#31), and defendants replied (#33). The court has reviewed the motion and papers, and hereby recommends that summary judgment be entered in favor of defendants.

        **I.**        **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Robert L. Williams ("plaintiff") was formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Acting *pro se*, and pursuant to 42 U.S.C. § 1983, plaintiff filed a complaint and an application to proceed *in forma pauperis* on January 13, 2015. (#1.) On April 20, 2015, plaintiff's first amended complaint ("FAC") was filed with the court. (#7.) The FAC reflected minor changes as to original complaint's dates and other details, but did not assert additional claims for relief. (*Compare* #1 *with* #7.) One month later, on May 20, 2015, the District Court screened the FAC pursuant to 28 U.S.C. 1915A, and permitted plaintiff to proceed on a First Amendment retaliation claim against defendants Moses, Baca, Walsh, Hannah, Miller, Mooney, Henson, Ralston, Bietler, and Murguia. (#9 at 3–6.)

Plaintiff's FAC relates several instances of retaliation he allegedly experienced in December 2014, while incarcerated at Northern Nevada Correctional Center ("NNCC). On November 23, 2015, defendants moved for dismissal or summary judgment on the grounds that plaintiff had failed to properly exhaust administrative remedies prior to filing his complaint. Plaintiff also moved for summary judgment (#32), but the court stayed briefing and consideration on his cross-motion pending resolution of the exhaustion issue. (#38). For the reasons discussed below, the court concludes that defendants are entitled to summary judgment, and that their motion should be granted.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough

evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

**A.   Exhaustion under the PLRA**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving there was an available administrative remedy left unexhausted by the inmate. *Albino*, 747 F.3d at 1172. A remedy is "available" when, as a practical matter, it is capable of use. *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). If the defendant makes such a showing, the burden shifts to the inmate, "who must show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Still, the ultimate burden of proof remains with the defendant. *Id.* Where circumstances render administrative remedies "effectively unavailable," an inmate's failure to exhaust is excused. *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

**B.      The NDOC's Inmate Grievance System**

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218. The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.[1]

NDOC's grievance process features three levels, beginning with the informal grievance. If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims," or within ten days for any other issues, including classification and disciplinary. AR 740.04, 740.05(4). The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." *Id.* at 740.05(8). NDOC staff is required to respond within forty-five days. *Id.* at 740.05(12). An

---

[1] Defendants attach an unauthenticated copy of AR 740 to their motion. (*See* #29-19.) However, AR 740 is a public document readily available online, and the court will cite to this online version. *See* NDOC, *Administrative Regulation 740: Inmate Grievance Procedure* (2014), http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074 0%20-%20091614.pdf.

inmate who is dissatisfied with the informal response may appeal to the formal level within five days. *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." *Id.* at 740.06(2). The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4). Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. *Id.* at 740.07(1). Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. *Id.* at 740.07(3), (4). Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

Each NDOC institution must maintain locked boxes that inmates can directly access in order to submit grievances. *Id.* at 740.01(1). The institution's Grievance Coordinator is to record receipts, transmittals, actions, and responses to all grievances, and stamp each page of a grievance with the date it is entered into the Nevada Offender Tracking Information System ("NOTIS"), NDOC's system for electronically storing inmate grievances. *Id.* at 740.01(5). Separate grievance files are to be maintained for each inmate. *Id.* at 740.02(1). The grievance file should include all forms and relevant attachments for each level of the grievance process, and must be kept for a minimum of five years after a final decision is issued. *Id.* at 740.02(2), (4).

**C.  Analysis**

Plaintiff filed his original complaint on January 13, 2015. The allegations contained in the original complaint and the FAC, received by the court on April 20, 2015, relate to alleged acts of retaliation taken against him in December 2014. (*See* #1; #7.) Plaintiff filed five separate grievances concerning those acts, all commenced at the informal level between December 8 and December 19, 2014.[2] (#29 at 6; #31 at 2.) Defendants contend that plaintiff initiated the present

---

[2] Defendants attached authenticated copies of the records for the five grievances to their motion. (*See* #29-1 to 29-14.)

action prior to exhausting those grievances, and that dismissal is thereby required. (#29 at 6–11.) Plaintiff counters that defendants did not respond to his grievances in a timely manner, and thus that the grievance process was effectively unavailable. (#31 at 1–2.) He argues that the exhaustion requirement should be excused. (*Id.*)

Defendants concede that some of the responses to plaintiff's grievances were issued after the deadlines set forth in AR 740. (*See* #29 at 8–10.) An unjustified delay in responding to a grievance, "particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Brown,* 422 F.3d at 943 n.18. However, prison officials' failure to timely respond does not render administrative remedies unavailable per se. *See Torrez v. Corrs. Corp. of America*, 540 Fed. App'x 809, 809 (9th Cir. 2013); *Womack v. Bakewell*, No. CIV S-09-1431 GEB KJM P, 2010 WL 3521926, at *5 (E.D. Cal. Sept. 8, 2010). An inmate must demonstrate "a good-faith effort . . . to exhaust a prison's administrative remedies as a prerequisite to finding administrative remedies unavailable." *Albino v. Baca*, 697 F.3d 1023, 1035 (9th Cir. 2012), *reh'g en banc granted*, 709 F.3d 994 (9th Cir. 2013); *see also Sapp*, 623 F.3d at 823 (to fall within the exception to the exhaustion requirement, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted . . .").

The grievance record undermines plaintiff's argument that untimely responses rendered administrative remedies unavailable to him. There is no evidence that plaintiff made a good-faith effort to exhaust NDOC's grievance process—he filed the original complaint before he received an informal response to any of his five grievances, and, indeed, even before NDOC staff was obligated to respond.[3] Pursuant to AR 740.05(12), informal responses are to be returned to an inmate within forty-five days. Plaintiff filed the complaint nine days before an informal response

---

[3] In this case, the date of the original complaint is the "proper yardstick" for exhaustion purposes. *See Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014). In *Cano*, the Ninth Circuit held that new claims based on actions that took place before an original complaint was filed are not barred so long as the claims are exhausted prior to the filing of the amended complaint. *Id.* However, because plaintiff's original complaint and FAC assert the same First Amendment retaliation claim, the rule of *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002) controls: exhaustion must have occurred prior to the filing of the original complaint. *See Ricks v. Doe*, No. 1:10–cv–02256–LJO–SKO (PC), 2015 WL 673035, at *4–5 (Feb. 17, 2015); *Jackson v. C.D.C.R.*, No. C 12–2516 CRB (PR), 2015 WL 695412, at *4 (N.D. Cal. Feb. 18, 2015).

was due in grievance number 2006-29-90799, ten days before a response was due in 2006-29-90815, twelve days before a response was due in 2006-29-90957, fourteen days before a response was due in 2006-29-91033, and twenty days before a response was due in 2006-29-92797. (*See* #33 at 7; #29-1 at 2; #29-4 at 2; #29-7 at 2; #29-10 at 2; #29-13 at 2.) Thus, the belated responses did not thwart plaintiff's attempts to exhaust, and could not have played a role in his decision to initiate this action.

Further, apart from the delays themselves, plaintiff has not alleged or shown that he was prejudiced by the late responses. He does not argue that his grievances were "particularly time-sensitive." *See Brown*, 422 F.3d at 943 n.18. The delays did not endanger his ability to properly file a complaint in federal court, because the statute of limitations is tolled for the pendency of the exhaustion process. *Id.* at 942–43. Finally, at the informal and first grievance levels, plaintiff was entitled to proceed to the next level when a response was overdue. AR 740.03(8). As such, administrative avenues remained open to him even after the response deadlines passed. *See Ellis v. Cambra,* No. 1:02-cv-05646-AWI-SMSP, 2005 WL 2105039, at *5 (E.D. Cal. Aug. 30, 2005). "If there is a process available, it must be utilized, regardless of how tiresome or trying." *Id.* (citing *Porter*, 534 U.S. at 524).

The undisputed evidence shows that plaintiff failed to exhaust administrative remedies prior to initiating this action, and that those remedies were available to him. Under the PLRA, exhaustion is a "precondition to suit" that cannot be satisfied during the course of litigation. *McKinney v. Carey*, 311 F.3d 1198, 1199–20 (9th Cir. 2002) (quotation omitted). Accordingly, plaintiff's claim must be dismissed without prejudice to refiling. *Id.* at 1120–21.

## IV.   CONCLUSION

Based on the foregoing, the court finds that defendants are entitled to summary judgment. The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate

Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#29) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: April 5, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**